## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ASSOCIATION OF LATINO ELECTED OFFICIALS, INC., as an organization; GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., as an organization; ASIAN AMERICANS ADVANCING JUSTICE – ATLANTA, INC., as an organization; NEW GEORGIA PROJECT, as an organization; COMMON CAUSE as an organization;<br><br>       Plaintiffs,<br><br>v.<br><br>GWINNETT COUNTY BOARD OF REGISTRATION AND ELECTIONS; JOHN MANGANO, STEPHEN DAY, BEN SATTERFIELD, BEAUTY BALDWIN, and ALICE O'LENICK, in their official capacities as members of the Board of Registration and Elections; BRAD RAFFENSPERGER, in his official capacity as the Secretary of State of Georgia;<br><br>       Defendants. | Civil Action<br>Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**EXPEDITED TREATMENT REQUESTED**<br><br>**Section 203 of the Voting Rights Act (52 U.S.C. § 10503) and Section 4(e) of the Voting Rights Act (52 U.S.C. § 10303)** |

**INTRODUCTION**

1.      This is an action to enforce the statutory guarantee of equal access to the franchise for limited-English proficient ("LEP") Spanish speaking voters in Gwinnett County under Section 203 of the Voting Rights Act, 52 U.S.C. § 10503 ("Section 203"), and for Gwinnett County LEP voters educated in Puerto Rico under Section 4(e) of the Voting Rights Act, 52 U.S.C. § 10303 ("Section 4(e)").

2.      During the week of March 30, 2020, Georgia Secretary of State BRAD RAFFENSPERGER used CARES Act funds to mail English-only absentee ballot applications to Georgia's 6.9 million active voters to encourage them to vote by mail in Georgia's upcoming primary election due to the public health risk posed by in-person voting to voters, poll workers, and election officials resulting from the COVID-19 pandemic.

3.      Since December 2016, Gwinnett County has been a covered jurisdiction under Section 203, entitling its LEP Spanish speaking voters to receive bilingual voting materials and assistance.  The county also has a substantial population of LEP Spanish speaking voters educated in Puerto Rico who are entitled to receive bilingual voting materials and assistance under Section 4(e).

4.      Defendants RAFFENSPERGER and the GWINNETT COUNTY BOARD OF REGISTRATION AND ELECTIONS ("BORE") are aware of the

obligation to provide Gwinnett County's LEP Spanish speaking voters with translated materials and assistance under Sections 203 and 4(e) as evidenced by their coordinated efforts to ensure that Gwinnett's LEP Spanish-speaking inactive voters received bilingual "last chance" purge notices in the fall of 2019. These notices gave multitudes of voters – approximately 22,000 in Gwinnett County alone – a final warning to update or confirm their address information to avoid having their voter registrations cancelled in December of 2019.

5.     The Secretary of State's office mailed an English-only version of the 2019 "last chance" purges notices to all voters outside of Gwinnett County, while the Gwinnett County BORE mailed a bilingual version of the same document to affected voters in Gwinnett County.

6.     Nevertheless, Defendants RAFFENSPERGER and the GWINNETT COUNTY BORE have failed to take any steps to ensure that Gwinnett County's LEP Spanish speaking voters receive bilingual absentee ballot applications for the upcoming primary election as required by Sections 203 and 4(e).

7.     Compounding the problem, neither of the Defendants have a bilingual absentee ballot application form visible on their websites. Although there is a poorly translated Spanish language version of the absentee ballot application available on the Gwinnett County BORE's website, the only way LEP Spanish

speaking voters can access it is by navigating an English-only website and clicking on a small rectangular box in the bottom right hand corner of the page labeled, "English   >" to be taken to a link to the Spanish language form.

8.     Defendants are in violation of Section 4(e) and the Gwinnett BORE is in violation of Section 203 of the Voting Rights Act by mailing English-only absentee ballot applications to Gwinnett County voters and failing to post a downloadable and accurately translated bilingual absentee ballot application in a readily accessible location on its website as of the week of March 30.  Remedial relief is necessary to ensure that Gwinnett County's LEP Spanish speaking voters receive the language assistance they need to effectively participate in the upcoming election cycle by way of mail voting in the midst of the COVID-19 epidemic.

9.     Plaintiffs seek narrow and targeted relief in this action.  Plaintiffs seek an order compelling Defendants to mail bilingual absentee ballot applications to the Gwinnett County voters who received English-only applications, and post an accurately translated bilingual application on their websites, accompanied by bilingual instructions for completing and submitting the form.

## **JURISDICTION & VENUE**

10.     This Court has jurisdiction of this action pursuant to (1) 28 U.S.C. § 1343(a), because this action seeks to redress the deprivation, under color of state

law, of rights, privileges and immunities secured by the United States Constitution;

and (2) 28 U.S.C. § 1331, because this action arises under the laws of the United

States.

11.     This Court has jurisdiction to grant both declaratory and injunctive

relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2),

because a substantial part of the events or omissions giving rise to the claims

occurred in this district.

## PARTIES

13.     Plaintiff GEORGIA ASSOCIATION OF LATINO ELECTED

OFFICIALS, INC. ("GALEO") is a domestic nonprofit corporation organized

under the laws of the State of Georgia.  GALEO was founded in 2003 and is one of

the oldest, largest, and most significant organizations promoting and protecting the

civil rights of Georgia's Latino community.  GALEO has approximately 165

members across Georgia, which includes members in Gwinnett County.  GALEO's

headquarters is located in Norcross, which is in Gwinnett County, and a substantial

amount of GALEO's civic engagement, voter registration and get out the vote

work takes place in Gwinnett County.  This work includes organizing voter

education, civic engagement, voter empowerment and get out the vote events and

5

conducting voter registration drives.  After Gwinnett County became covered

jurisdiction for Spanish under Section 203 in December 2016, GALEO has worked

with the Gwinnett County BORE in an effort to bring its procedures and election

materials into compliance with the law's requirements.  During the 2020 election

cycle, GALEO has also been working to address challenges facing Gwinnett

County's LEP Spanish speaking voters as a result of the impact of the COVID-19

pandemic.  GALEO sent bilingual mailers to Latinx Gwinnett County voters with

information about the presidential primary.  After the March primary was

postponed, GALEO sent out another round of bilingual mailers providing Latinx

voters with updated information.  Now that the primary has been postponed until

June, GALEO expects to send out another round of bilingual mailings providing

Latinx voters in Gwinnett County with updated information about the election and

relevant deadlines.  Because Defendants mailed English-only absentee ballot

applications to Gwinnett County's LEP Spanish-speaking voters, GALEO has

diverted, and will continue to divert, time and resources that would ordinarily be

directed to GALEO's other organizational goals and priorities, in an effort to help

mitigate the failure of the Defendants to comply with Sections 203 and 4(e), for

example by reaching out to and educating LEP Spanish-speaking voters about how

to navigate the mail voting process and how to complete the application.

14.     Plaintiff GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC. ("GCPA") is a domestic nonprofit corporation organized under the laws of the State of Georgia.  The GCPA is a coalition of more than 30 organizations, which collectively have more than 5,000 individual members.  The GCPA encourages voter registration and participation, particularly among Black voters, other voters of color, language minority voters, students and other underrepresented communities.  The organization commits time and resources to civic engagement, voter registration drives, voter education, voter ID assistance, get out the vote ("GOTV") efforts, including Souls to the Polls, minority language assistance and other initiatives that seek to encourage voter registration and participation.  Due to the spread of the COVID-19 virus in Georgia, which poses an extreme public health risk to voters during the 2020 election cycle, the GCPA has been devoting, and will continue to devote, time and resources to public information campaigns and other initiatives to encourage voters to exercise their right to vote by mail.  However, absentee voting by mail has posed significant challenges for the communities GCPA serve due to the complicated processes involved in applying for and returning the ballot.  Defendants' decision to mail English-only absentee ballot applications to Gwinnett County voters has caused,

and will continue to cause, GCPA to divert resources to help mitigate the

Defendants' failure to comply with and enforce Sections 203 and 4(e).

15.     Plaintiff ASIAN AMERICANS ADVANCING JUSTICE –

ATLANTA, INC. ("Advancing Justice") has its principal place of business in

Norcross in Gwinnett County. Advancing Justice was founded in 2010 to protect

and promote the civil rights of Asian Americans and Pacific Islanders ("AAPIs")

and other immigrant, refugee and language minority communities in Georgia,

including in Gwinnett County, through policy advocacy, legal services, impact

litigation, and civic engagement.  Advancing Justice engages in voter registration,

voter education, and GOTV efforts and seeks to increase voter participation among

newly naturalized citizens, people of color, immigrants, LEP individuals, and folks

in other traditionally underserved communities, including by disseminating

Spanish-language "know your rights" informational materials.  During this election

cycle, Advancing Justice is calling and texting Gwinnett County voters to provide

them information about voter registration, absentee voting and other voting and

election related issues to increase registration and voter turnout.  Due to the risks of

in-person voting posed by the COVID-19 crisis and Defendants' mailing English-

only absentee ballot applications to Gwinnett County voters, Advancing Justice has

diverted, and will continue to divert, resources to mitigating the impact on

Gwinnett County's LEP Spanish speaking voters.  Advancing Justice, along with partners, is making videos in multiple languages (including in Spanish, Korean, Mandarin, Vietnamese and English languages) to provide LEP voters and other underserved communities with information about voting by mail.

16.     Plaintiff NEW GEORGIA PROJECT, INC. ("NGP"), is registered in Georgia as a foreign nonprofit corporation. NGP's mission is to build power within the New American Majority, which includes people of color, language minority citizens, young people aged 18 to 29 years old, and unmarried women—through civic and voter engagement.  NGP organizes voter registration, civic engagement and GOTV events in Gwinnett County, including "souls to the polls" campaigns. Organizing around absentee voting is also an important part of NGP's work. NGP's "Loose the Chains" initiative—a partnership with religious institutions such as churches, mosques, and synagogues to register people to vote, disseminate multilingual information about voting rights and voter protection – including in Spanish – and bring voters to vote—including a Black, Latinx, and AAPI church "vote by mail" campaign.  NGP has helped over 10,000 Gwinnett County voters register to vote.  In 2020, before its organizing work had to be restructured due to the COVID-19 outbreak, NGP had helped over 1,000 Gwinnett voters of color to vote early in the primary.  As a result of Defendants sending English-only bilingual

absentee ballot application forms to Gwinnett's LEP Spanish speaking voters, NGP has diverted, and will continue to divert, resources toward mitigating the negative impacts of this failure on Gwinnett County's LEP Spanish speaking voters through civic engagement, voter education and other assistance, including through its election protection efforts in Gwinnett County.

17.     Plaintiff COMMON CAUSE is one of the nation's leading grassroots democracy-focused organizations and has over 1.2 million members nationwide and chapters in 35 states, including 19,667 members and supporters in Georgia. Since its founding in 1970, COMMON CAUSE has been dedicated to the promotion and protection of the democratic process.  In Georgia, COMMON CAUSE works in the areas of election protection, voter education, registration, advocacy, outreach, get out the vote, and grassroots mobilization around voting rights.  COMMON CAUSE has worked alongside partners to help recruit volunteers to assist limited English-proficient Spanish speaking voters and provide Spanish language election materials.  COMMON CAUSE has had to divert resources from its election protection efforts to engage additional Spanish-speaking volunteers to assist impacted limited English proficient Gwinnett County voters impacted by Defendants' decision to send them English-only applications.

18.     Defendant GWINNETT COUNTY BOARD OF REGISTRATION AND ELECTIONS ("BORE") is responsible for the administration of elections in Gwinnett County, as provided by Georgia state law.   *See* O.C.G.A. § 21-2-40.

19.     Defendants JOHN MANGANO, STEPHEN DAY, ALICE O'LENICK, BEAUTY BALDWIN, and BEN SATTERFIELD, ("BORE Members") are members of the BORE and are being sued in their official capacities.  The BORE members have the authority of a county election superintendent with respect to conducting elections in Gwinnett County.  O.C.G.A. § 21-2-70 *et. seq*.  Duties of an election superintendent include, among others, the following: "[t]o prepare and publish, in the manner provided by this chapter, all notices and advertisements, in connection with the conduct of elections, which may be required by law, and to transmit immediately to the Secretary of State a copy of any publication in which a call for a special primary, election, or runoff is issued;" "[t]o make and issue such rules, regulations, and instructions, consistent with law, including the rules and regulations promulgated by the State Election Board, as he or she may deem necessary for the guidance of poll officers, custodians, and electors in primaries and elections;" and, "[t]o conduct all elections in such manner as to guarantee the secrecy of the ballot and to perform such other duties as may be prescribed by law."  O.C.G.A. §§ 21-2-70 (3), (7), (13).

11

20.     Defendant BRAD RAFFENSPERGER is Georgia's Secretary of State.  He is named as a defendant herein in his official capacity.  As Secretary of State, Defendant RAFFENSPERGER is Georgia's chief election official who oversees and administers elections and also serves as the Chairman of the Georgia State Election Board.  O.C.G.A. §§ 21-2-30(d), 21-2-50.  His responsibilities as Chairperson of the State Election Board include working with other members of the Board to promulgate rules and regulations so as to obtain uniformity in the practices and proceedings of local election officials, ensuring the legality of all primaries and elections, and to promulgate rules conducive to the fair, legal, and orderly conduct of primaries and elections.  O.C.G.A. § 21-2-31

## **FACTUAL ALLEGATIONS**

### **COVID-19 CAUSES LOCKDOWN OF GWINNETT COUNTY AND TWO POSTPONEMENTS OF PRIMARY ELECTIONS**

21.     The COVID-19 epidemic has paralyzed civic life in Gwinnett County.

22.     Georgia is among the states with the highest number of cases; the most recent data indicates that there are at least 12,550 confirmed cases and 442 COVID-19-related deaths in Georgia and 701 cases and 19 deaths in Gwinnett County, according to the Georgia Department of Public Health.

23.     On March 13, President Trump declared the pandemic a national emergency.  On March 15, Defendant Raffensperger postponed Georgia's

presidential primary election from March 24 to May 19, 2020, combining the presidential primary with the previously scheduled primary date for other offices.

24.     On March 27, emergency shelter in place orders were issued by Gwinnett County and its 16 municipalities.  The Gwinnett County shelter in place order was set to last from March 28 until April 13, 2020.

25.     On April 2, Governor Kemp issued an executive order requiring "[t]hat all residents and visitors of the State of Georgia" shelter in place between April 3 and April 13.  This marked an expansion on the Governor's March 23 order banning gatherings of more than 10 people and ordering a shelter in place for "medically fragile" residents, and his March 26 order closing public elementary, secondary, and post-secondary schools in the state until April 24.  On April 8, Governor Kemp extended the state of emergency in Georgia until May 13, 2020.

26.     On April 9, Defendant Raffensperger postponed an election again, moving the consolidated primary election from May 19 to June 9, 2020.  His press release announcing the delay acknowledged that "challenges will certainly remain on June 9" but the additional time "will give the Secretary of State's office and counties time to shore up contingency plans, find and train additional poll workers," and make other preparations.

## THE SECRETARY OF STATE MAILS ABSENTEE BALLOT APPLICATIONS TO ACTIVE VOTERS DUE TO COVID-19

27.     To address the coronavirus outbreak – noting the "[t]imes of turbulence and upheaval like the one we Georgians face" – the Secretary of State began mailing English-only absentee ballot applications to all active voters in Gwinnett County and the rest of Georgia during the week of March 30, 2020.

28.     Any registered voter may vote absentee regardless of whether they have an excuse for not being present on Election Day.  O.C.G.A. § 21-2-380.  To vote by mail, a voter must first submit an absentee ballot application via mail, fax, e-mail, or in-person.  O.C.G.A. § 21-2-381.  To fill out the application, voters must select a political party, sign the forms, add a 55-cent stamp, and mail the envelope.

29.     Upon receipt of the application, election officials mail the ballot to the voter, which will be counted if the voter returns it to officials by the time polls close.  Counties began sending out mail ballots to voters on March 31, 2020.

30.     Defendant Raffensperger's press release announcing the mail ballot measures acknowledged that "Georgians who need language assistance" are among the groups who are less likely to be able to take advantage of the absentee-by-mail voting option and that they need other avenues to vote, including in-person voting.

31.     However, voting in person risks the health of voters and non-profit groups have ceased in-person get out the vote work in Gwinnett County.  Poll

workers, many of whom are elderly and vulnerable to COVID-19, are also quitting in large numbers, risking the closure of polling places.  As a result, the Secretary of State's office has instructed election officials in the 159 counties that "[y]ou should begin preparations now for a significant increase in absentee by mail ballots."

32.     The absentee ballot applications mailed to Gwinnett County voters by the Secretary of State are in English only, as the Gwinnett County BORE Defendants conceded in their April 8, 2020 letter.

33.     This has a huge impact on Latino voters in Gwinnett County.  The Census Bureau's 2018 American Community Survey 5-Year Estimate indicates there are 13,937 limited English proficient Spanish speaking citizens of voting age in Gwinnett County, out of 40,576 total LEP Spanish speakers in the county.

34.     LEP Spanish speaking Gwinnett County voters are unable to read and understand the English-only absentee ballot application mailed to their residences. Some do not even know that absentee voting is an available option to them and would have benefited from receiving this important voting information in Spanish.

35.     Moreover, the COVID-19 outbreak exacerbates barriers to accessing the mail voting process for LEP Spanish speaking voters in Gwinnett County. Many LEP voters who are not familiar with voting by mail do not know how to obtain an application or who they should contact to get one.  LEP voters without a

computer, printer or access to the internet will be unable to download and print the

poorly translated version of the form on the Gwinnett County BORE's website at

all – even if they are able to find it in the first place.

36.    Some LEP Spanish language voters rely on relatives or friends to

translate English materials for them, which is hampered by the social distancing

and shelter in place directives that are limiting non-essential travel and gatherings.

**THERE ARE NO BILINGUAL ABSENTEE BALLOT APPLICATIONS ON THE SECRETARY OF STATE'S OR GWINNETT COUNTY'S WEBSITES**

37.    There are no bilingual or Spanish language absentee ballot application

forms available for download on the Secretary of State's website.  On the Gwinnett

County BORE website, the only visible absentee ballot application is in English.

At the bottom right hand corner of the Gwinnett County BORE's webpage with the

English-only absentee ballot application form is a small box marked "English  >".

If the user clicks that button, a panel appears indicating that the form in Spanish

and other languages is available.  As a practical matter, it would be difficult, if not

impossible, for most LEP voters to navigate the English-only website and access

the Spanish language version of the form.

38.    In addition, the Spanish version of the form on the Gwinnett County

BORE's site is poorly translated.  It includes a nonsensical phrase, fails to issue a

command contained in the English version, and asks voters to select multiple elections while the English version asks for one election.

39.    A disclaimer on Gwinnett County's website states that "the machine-generated website translations . . . may not be entirely correct" and "[a]ny person that uses the translation service does so at that person's own risk and accepts the legal implications of any shortcomings or difference in translation."[1]

**PLAINTIFFS' PROMPT RESPONSE TO THE VIOLATIONS**

40.    Plaintiffs found out about the violations of Section 4(e) and 203 of the Voting Rights Act for the first time on Friday, April 3, when they learned that the absentee ballot applications sent to Gwinnett County voters were in English only.

41.    Plaintiffs promptly sent a letter requesting remedial action to attorneys for all Defendants on Tuesday, April 7.

42.    Gwinnett County Defendants responded with an April 8 letter stating that "[a]t this point, Gwinnett County will not comply with either demand for remedial action contained in your letter," adding "Gwinnett County is reviewing its website and Spanish-language absentee ballot application and will provide a response on those issues after a sufficient time to review your allegations."

---

[1] *See* https://www.gwinnettcounty.com/web/gwinnett/contactus/translation.

43.     Defendant Raffensperger has not responded to Plaintiffs' letter and there is no indication that he has taken any remedial action to date.

## CLAIMS FOR RELIEF

### COUNT I

### Section 203 of the Voting Rights Act (52 U.S.C. § 10503)

44.     Plaintiffs incorporate by reference and reallege herein each of the foregoing paragraphs of this Complaint.

45.     Gwinnett County became a covered jurisdiction under Section 203 of the Voting Rights Act on December 5, 2016.

46.     Section 203 imposes an affirmative obligation on covered jurisdictions to provide bilingual voting materials for the applicable language minority group.  As a result, voters in Gwinnett County must receive "any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots . . . in the language of the applicable minority group as well as in English."  52 U.S.C. § 10503(c).

47.     These requirements are "broadly construed to apply to all stages of the electoral process, from voter registration through activities related to conducting elections."  28 C.F.R. 55.15.

18

48.     Covered jurisdictions are required to offer translations of all election-related written materials including the ballot, registration forms, sample ballots, elections notices, and the locality's website.  Under the plain language of the statute, jurisdictions are strictly liable for any failure to translate written materials.

49.     Under Section 203, Gwinnett County voters must have equal access to the electoral process when the Secretary of State's office disseminates absentee ballot applications or other materials.  *See* 28 C.F.R. 55.10(c) (providing that for "elections for an office representing more than one county . . . the bilingual requirements are applicable on a county-by-county basis").  According to the applicable Department of Justice regulation, "a county subject to the bilingual requirements must insure compliance with those requirements with respect to all aspects of the election."  28 C.F.R. 55.10(b).

50.     In 2019, the Georgia Secretary of State mailed English-only "last chance" notices to all inactive voters at risk of removal in Georgia – except for Gwinnett County, who sent its own bilingual notices to its voters.  A Gwinnett Daily Post article quoted Elections Director Kristi Royston as saying, "[s]ince we're the only county that has both English and Spanish (elections language requirements), we get the file and then work with our vendor to produce and print our notices."  In 2018, Ms. Ledford noted that Gwinnett County provided bilingual "I Voted" stickers

in response to guidance from the Department of Justice.  Furthermore, Gwinnett municipalities have provided bilingual election materials and notices and are subject to Section 203 although they run their own elections and are not independently covered according to the Census Bureau's December 2016 determination.

51.     The mailing of the English-only absentee ballot application form to Gwinnett County's voters and the continuing refusal to mail a bilingual version of the form to Gwinnett County voters violates Section 203 of the Voting Rights Act.

52.     The impact of the ongoing violation is exacerbated by the fact that the websites of the Secretary of State and the Gwinnett County BORE do not provide access to a downloadable bilingual version of the form and the Gwinnett County BORE's website has a poorly translated Spanish language version of the form that is virtually impossible for LEP Spanish speaking voters to find.

53.     Defendants' ongoing violations of Section 203 of the Voting Rights Act deny equal access to the mail voting process in the upcoming primary election to Gwinnett County's LEP Spanish speaking voters, impairing the work of Plaintiff organizations and forcing them to divert resources accordingly.

## COUNT 2

## Section 4(e) of the Voting Rights Act (52 U.S.C. § 10303)

54.     Plaintiffs incorporate by reference and reallege herein each of the foregoing paragraphs of this Complaint.

55.     Section 4(e) of the Voting Rights Act mandates protection of the voting rights of non-English speaking United States citizens and forbids conditioning the right to vote of a person educated in an American-flag school where English was not the language of instruction on his or her degree of fluency in English.  *See* 52 U.S.C. § 10303(e)(2).

56.     Under Section 4(e), no jurisdiction can deny these individuals the right to vote based on his or her "inability to read, write, understand, or interpret" the English language.  *Id*.  The statute therefore applies squarely to the Georgia Secretary of State, as well as to the Gwinnett County BORE.

57.     Unlike Section 203, Section 4(e) does not apply only to jurisdictions that meet certain population thresholds.  The number of affected Puerto Rican individuals in Gwinnett County is nonetheless substantial.  The 2018 ACS Public Use Microdata Estimates indicates that approximately 3,031 Gwinnett County residents of voting age were born in Puerto Rico.  The 2018 ACS 5-Year Estimates indicates approximately 11,993 Puerto Rican citizens reside in Gwinnett County.

58.     The right to vote under Section 4(e) encompasses the right to an effective vote.  As a result, Section 4(e) requires that jurisdictions provide instructions, ballots, and "any other material which forms part of the official communication to registered voters prior to an election" in Spanish language and the failure to do so violates Section 4(e).

59.     The violation of Section 4(e) is patent in this case.  Neither of the Defendants mailed a bilingual or Spanish translated version of the absentee ballot application form to any LEP Spanish speaking voters in Gwinnett County, including those educated in Puerto Rico as required by Section 4(e).

60.     In addition, neither of the Defendants provides access to a bilingual version of the absentee ballot application online.  The Secretary of State's website does not offer any Spanish language translated voting materials, including the absentee ballot application form, on its website; and the poorly translated Spanish language form on the Gwinnett County BORE's website is not accessible to LEP Spanish speaking voters.

61.     Despite being notified of their violation of Section 4(e) by Plaintiffs, none of the Defendants have taken remedial action and are denying equal access to the mail voting process in the upcoming primary election to Gwinnett County's

LEP Spanish speaking voters, impairing the work of Plaintiff organizations and forcing them to divert resources accordingly.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that the Court:

1.     Enter judgment in favor of Plaintiffs and against Defendants on claims for relief as alleged in this Complaint;

2.     Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the failure of the Gwinnett County BORE Defendants to (1) mail an English-only version of Georgia's absentee ballot application to Gwinnett County voters, including to the county's LEP Spanish speaking voters, and (2) failing to make an accurately-translated bilingual absentee ballot application accessible on their website, violate Section 203 of the Voting Rights Act, 52 U.S.C. § 10503.

3.     Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that all Defendants violated Section 4(e) of the Voting Rights Act, 52 U.S.C. § 10303, by (1) mailing an English-only version of Georgia's absentee ballot application to Gwinnett County voters, including the county's LEP Spanish-speaking voters who were educated in Puerto Rico, and (2) failing to make an accurately-translated bilingual absentee ballot application accessible on their website.

4.     Grant Plaintiffs preliminary and/or permanent injunctive relief by ordering Defendants to undertake the following remedial actions:

    a.   Enjoin all continuing violations of Sections 203 and 4(e) of the Voting Rights Act by Defendants;

    b.   Mail an accurately translated bilingual version of Georgia's absentee ballot application to Gwinnett County voters who were sent English-only applications or, alternatively, to all voters who self-identified as "Hispanic/Latino" when they registered to vote and all voters residing in all Gwinnett County precincts for which at least five percent of voters identified as Hispanic on their voter registration cards without any further delay; and

    c.   Require that Defendants make an accurately-translated and equally accessible bilingual absentee ballot application available at a unique URL for download on their websites without further delay.

5.     Order that the Court shall retain jurisdiction over the Defendant and their successors for such period of time as may be appropriate to ensure compliance with relief ordered by this Court;

6.     Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute; and

7.     Grant Plaintiffs further relief as may be just and equitable.

Dated: April 13, 2020          Respectfully submitted,

**/s/ Bryan L. Sells**
BRYAN L. SELLS
Georgia Bar #635562
The Law Office of Bryan L. Sells, LLC.
P.O. Box 5493
Atlanta, GA  31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com

**Ezra D. Rosenberg**
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
Email: erosenberg@lawyerscommittee.org

**Julie Houk**
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8391
Email:  jhouk@lawyerscommittee.org

**John Powers**
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8389
Email:  jpowers@lawyerscommittee.org

*Counsel for Plaintiffs*

## <u>LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE</u>

I certify that this pleading has been prepared with Times New Roman font,

14 point, as approved by the Court in L.R. 5.1(C), N.D. Ga.


**/s/ Bryan L. Sells**
BRYAN L. SELLS
Georgia Bar #635562
The Law Office of Bryan L. Sells, LLC.
P.O. Box 5493
Atlanta, GA  31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of April 2020, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system.

**/s/ Bryan L. Sells**
BRYAN L. SELLS
Georgia Bar #635562
The Law Office of Bryan L. Sells, LLC.
P.O. Box 5493
Atlanta, GA  31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com