**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA ASSOCIATION OF LATINO ELECTED OFFICIALS, INC., as an organization, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GWINNETT COUNTY BOARD OF REGISTRATION AND ELECTIONS, et al., <br><br> Defendants. | Civil Action <br> Case No. 1:20-cv-01587-WMR |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION
FOR TEMPORARY RESTRAINING ORDER AND MOTION
FOR PRELIMINARY INJUNCTION WITH PROPOSED
<u>FINDING OF FACT AND CONCLUSIONS OF LAW</u>**

Under Section 203 of the Voting Rights Act, Gwinnett County has a duty to provide absentee ballot applications in Spanish if the Secretary of State provides them only in English. Just as the Gwinnett County BORE had a duty to mail – and did mail – bilingual purge notices to inactive voters in 2019 even though the Secretary of State sent English-only notices to the rest of Georgia's voters, so, too, county officials had the same duty here.

Injunctive relief is required to remedy the violation of the rights of Plaintiffs Limary Ruiz Torres and Albert Mendez, as well as thousands of limited English proficient Spanish speaking U.S. citizens in Gwinnett County, including the members of Plaintiff organizations. The plain language of Section 203 compels the conclusion that the Secretary of State violated Section 4(e) of the Voting Rights Act when he sent English-only absentee ballot applications to Gwinnett County voters educated in Spanish-speaking school in Puerto Rico and that the Gwinnett County BORE violated Sections 203 and 4(e) of the Voting Rights Act when it failed to provide bilingual absentee ballot applications to limited English proficient Spanish-speaking Gwinnett County voters who were sent English-only versions. The Court issues Findings of Fact and Conclusions of Law as set forth below.

## **PROPOSED FINDINGS OF FACT**

1. In 2019, the Secretary of State mailed English-only "last chance" notices to all inactive voters at risk of removal in Georgia – except for Gwinnett County, which sent its own bilingual notices to its voters.  Powers Decl., Ex. 17.

2. A Gwinnett Daily Post article quoted Elections Director Kristi Royston as saying, "[s]ince we're the only county that has both English and Spanish (elections language requirements), we get the file and then work with our vendor to produce and print our notices."  *Id*.

3. In 2018, then-Elections Director Lynn Ledford noted that Gwinnett County provided bilingual "I Voted" stickers in response to guidance from the Department of Justice.  Powers Decl., Ex. 18.

4. Gwinnett municipalities provide bilingual election materials and notices and are subject to Section 203 although they run their own elections and are not independently covered according to the Census Bureau.  City of Duluth "City Elections // Elecciones De La Ciudad" website; Powers Decl., Ex. 10, Lawrenceville "Election Information // Informacion Electoral" website.

5. The COVID-19 epidemic has paralyzed civic life in Gwinnett County.  On March 13, President Trump declared the coronavirus pandemic a national emergency.  Georgia is among the states with the highest number of cases; the

most recent data indicates that there are at least 18,301 confirmed cases and 687 COVID-19-related deaths in Georgia and 1,099 cases and 38 deaths in Gwinnett County, according to the Georgia Department of Public Health.  Exhibit A, Declaration of John Powers, Exhibit 1, Georgia Department of Public Health COVID-19 Daily Status Report, p. 3.

6. To address the coronavirus outbreak – noting the "[t]imes of turbulence and upheaval like the one we Georgians face" –Secretary of State Raffensperger began mailing English-only absentee ballot applications to all active voters in Gwinnett County and the rest of Georgia the week of March 30.  Powers Decl., Ex. 8, *Raffensperger Takes Unprecedented Steps to Protect Safety and Voter Integrity in Georgia*, Press Release, Mar. 24, 2020.

7. The absentee ballot applications mailed to Gwinnett County voters by the Secretary of State are in English only.  Powers Decl., Ex. 22, Ltr. from Bryan P. Tyson, p. 3, Apr. 7, 2020.

8. Mailing English-only absentee ballot applications has a huge impact on Latino voters in Gwinnett County.  According to the 2018 American Community Survey 5-Year Estimate, there are 13,937 limited English proficient Spanish speaking citizens of voting age in Gwinnett County, out of 40,576 total

LEP Spanish speakers in the county. Exhibit O, Declaration of Jason Enos ¶ 9, Exs. 2-3.

9. Plaintiffs Limary Ruiz Torres and Albert Mendez are LEP Gwinnett County voters who were educated in Spanish-speaking schools in Puerto Rico. Exhibit L, Declaration of Limary Ruiz Torres ¶ 3; Exhibit M, Declaration of Albert Mendez ¶ 3.

10. Plaintiffs Ruiz Torres and Mendez, as well as LEP Gwinnett County voters Nelson Romero, Hugo Alvarez, and Clara Lunarejo Moreno, do not understand the English-only absentee ballot applications mailed to them. Ruiz Torres Decl. ¶¶ 12-13; Mendez Decl. ¶¶ 12-13; Exhibit F, Declaration of Nelson Romero ¶¶ 9-11; Exhibit G, Declaration of Clara Lunarejo Moreno ¶ 10-12; Exhibit H, Declaration of Hugo Alvarez ¶¶ 11-13.

11. Mr. Romero, due to his limited proficiency in English, thought the application was junk mail and put it in a pile with mail he intended to throw away before his son saw it and explained its contents to him. Romero Decl. ¶¶ 9-11, Ex. 3.

12. Plaintiffs Ruiz Torres and Mendez also thought their applications were junk mail; by contrast, they were able to complete their U.S. Census form

because it was mailed with a Spanish translation. Ruiz Torres Decl. ¶¶ 11, 21; Mendez Decl. ¶¶ 11, 21.

13.     Mr. Romero, Mr. Alvarez, Ms. Moreno, and Plaintiffs Ruiz Torres and Mendez have not yet completed their English-only applications and are awaiting translation assistance from family members; the translation process is lengthy and burdensome. Ruiz Torres Decl. ¶¶ 17-20; Mendez Decl. ¶¶ 17-20; Romero Decl. ¶ 13; H. Alvarez Decl. ¶¶ 16-18, 21; Moreno Decl. ¶¶ 15-17, 20.

14.     State House District 99 candidate Jorge Granados, who is bilingual, spoke with several LEP voters who live in the Norcross area near Singleton Road and Country Downs Drive in Spanish while campaigning. Granados Decl. ¶¶ 9-10.

15.     Mr. Granados' campaign, however, has limited resources and is not able to help them in the midst of the COVID-19 outbreak and the shelter in place order. *Id.* ¶¶ 15-18.

16.     Many LEP voters like Plaintiffs Ruiz Torres and Mendez, Mr. Romero, Mr. Alvarez, and Ms. Moreno are not familiar with voting by mail and do not know how to obtain an absentee ballot application or who to contact to get one. Ruiz Torres Decl. ¶ 14; Mendez Decl. ¶ 14; Romero Decl. ¶ 12; H. Alvarez Decl. ¶ 13; Moreno Decl. ¶ 12.

17. Many LEP voters in Gwinnett County, like Plaintiff Ruiz Torres, Plaintiff Mendez, Mr. Alvarez, and Ms. Moreno, are elderly and are limited in their ability to navigate the internet, if they access the internet or use a computer at all. Gonzalez Decl. ¶ 21; Ruiz Torres Decl. ¶ 15; Mendez Decl. ¶ 15; Moreno Decl. ¶¶ 14-15, 19; H. Alvarez Decl. ¶¶ 15-16, 20.

18. Many LEP voters usually rely on their children to translate English mailings for them, which is very time-consuming. H. Alvarez Decl. ¶ 15; Moreno Decl. ¶ 14; Romero Decl. ¶ 7.

19. Having a relative translate documents is no longer an option for many; public health officials are recommending that young people stay away from the elderly to avoid infecting vulnerable individuals. Gonzalez Decl. ¶ 18.

20. Many elderly LEP voters in Gwinnett County cannot receive assistance because their family is quarantined or not living in the same house. *Id*.

21. Due to the inflamed nature of the immigration debate, many Latinos are reluctant to contact government officials or even organizations like GALEO to ask for help translating their absentee ballot application. *Id*. ¶ 36.

22. There is no bilingual or Spanish language absentee ballot application on the Secretary of State's website. Gonzalez Decl. ¶ 22.

23.     As of April 13, 2020, when this litigation was filed, the only visible absentee ballot application on the Gwinnett County BORE website was in English but not in Spanish.  Gonzalez Decl. ¶ 22, Ex. 1.

24.     While the BORE has since posted a bilingual application, that fact has not been publicized and voters have to navigate the BORE's English-only "Absentee Voting By Mail" website to access it.  Gonzalez Decl. ¶¶ 23-25; Vargas Decl. ¶¶ 12-17.

25.     As a practical matter, most LEP voters will not navigate an English-only website to find the bilingual application.  Gonzalez Decl. ¶ 26.

26.     If Spanish-speaking voters want to access a computer-generated Spanish translation of the website, they have to find a small button in the bottom right hand corner of the webpage that says, "English," click it, and select "Español" from a menu.  Gonzalez Decl. ¶ 25.

27.     The link to the Spanish language version of the absentee ballot application is incorrect and misleading on the computer-generated Spanish translation.  A Spanish-speaking voter would need to click "In English" to access the Spanish-language application, making it virtually impossible to find.  Exhibit N, Declaration of Leopoldo Vargas ¶¶ 14-17; Exhibit K, Declaration of Cynthia Battles ¶¶ 17-18.

28. The quality of the computer-generated Spanish translation of the "Absentee Voting By Mail" website is poor and riddled with other errors that could prevent Spanish-speaking voters from navigating the mail voting process. *Id.*; *see also* Vargas Decl. ¶¶ 18-22.

29. Gwinnett County Defendants appear to anticipate these issues; their website includes a lengthy disclaimer acknowledging "the machine-generated website translations . . . may not be entirely correct" and "[a]ny person that uses the translation service does so at that person's own risk and accepts the legal implications of any shortcomings or difference in translation." Powers Decl., Ex. 20, Language Translation and External Site Link Disclaimer, https://www.gwinnettcounty.com/web/gwinnett/contactus/translation.

30. The number of Gwinnett County voters educated in Puerto Rico schools is substantial. The Center for Puerto Rican Studies at Hunter College, CUNY has confirmed that Gwinnett County has the largest Puerto Rican population – by far – of any county in Georgia, both in terms of raw numbers and their share of the county's overall Latino population. Exhibit O, Declaration of Jason Enos ¶ 12, Ex. 6, *Puerto Ricans in Georgia, the United States, and Puerto Rico, 2014* (Sept. 2016), p. 5, Center for Puerto Rican Studies, Hunter College.

31.	The 2018 ACS Public Use Microdata Estimates indicates there are approximately 4,676 Gwinnett County citizens of voting age who were born in Puerto Rico, and the 2018 ACS 5-Year Estimates indicates that 11,993 Puerto Rican citizens reside in Gwinnett County.  Enos Decl. ¶ 10-11.

## PROPOSED CONCLUSIONS OF LAW

1.	Plaintiffs Ruiz Torres and Mendez have standing to bring their Section 203 and 4(e) claims.  They are LEP Gwinnett County voters who were educated in Spanish-speaking schools in Puerto Rico who cannot read English and have not completed the English-only absentee ballot applications they received in the mail.  They will continue to have standing even if they are ultimately able to navigate the language barrier and complete their absentee ballot application.  *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009).

2.	The organizational Plaintiffs – GALEO, Advancing Justice, GCPA, NGP, and Common Cause – also have standing.  Organizations engaged in voter registration and get out the vote activities have standing when a defendant impairs those activities, forcing them to divert time, money and staff to assist voters.  *See, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014); *see also*

9

*Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350-51 (11th Cir. 2009); *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1165-66 (11th Cir. 2008).

3. GALEO also has associational standing. *See Arcia*, 772 F.3d at 1342; *Browning*, 522 F.3d at 1160. An organization needs to establish, among other elements, "that at least one member faces a realistic danger of [injury]." *Browning*, 522 F.3d at 1163. GALEO's membership in Gwinnett County includes voters who are disadvantaged by Defendants' failure to provide a bilingual absentee ballot application.

4. Section 203 of the Voting Rights Act seeks to "enable members of applicable language minority groups to participate effectively in the electoral process." 28 C.F.R. § 55.2(b); *see also U.S. v. Sandoval Cty., N.M.*, 797 F.Supp.2d 1249, 1250 (D.N.M. 2011) ("In enacting [Section] 203 of the Voting Rights Act … Congress intended that language minority populations have substantive access to the ballot" (internal quotations omitted)).

5. Gwinnett County became covered under Section 203 of the Voting Rights Act on December 5, 2016. "Voting Rights Act Amendment of 2006, Determinations Under Section 203," Federal Register, Vol. 81, No. 233, Dec. 5, 2016, *available at* https://www.justice.gov/crt/file/927231/download.

6. Gwinnett County must provide "any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots . . . in the language of the applicable minority group as well as in English." 52 U.S.C. § 10503(c). These requirements are "broadly construed to apply to all stages of the electoral process, from voter registration through activities related to conducting elections." 28 C.F.R. 55.15; *U.S. v. Metro. Dade Cty., Fla.*, 815 F. Supp. 1475, 1478 (S.D. Fla. 1993) (applying regulation to pamphlet answering questions about upcoming elections).

7. In interpreting provisions of the Voting Rights Act, courts should give the statute a broad construction. *Metro. Dade Cty*. at 1477-78 (citing *Allen v. State Bd. of Elections*, 393 U.S. 544, 565 (1969)).

8. Covered jurisdictions are required to offer translations of all election-related written materials including the ballot, voter registration forms, sample ballots, election notices, and website. *Navajo Nation Human Rights Comm'n v. San Juan Cty.,*, 215 F. Supp. 3d 1201, 1220 (D. Utah 2016) (stating Section 203 requires "*all* written voting materials to be provided 'in the language of the applicable minority group as well as the English language'") (emphasis in original); *see also Metro. Dade Cty*. at 1477-78. Under the plain language of the statute, jurisdictions are strictly liable for any failure to translate written materials.

11

*Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1008-09 (9th Cir. 1978) (holding that a locality cannot avoid liability under Section 203 by claiming it acted in good faith).

9. Courts have routinely held that documents must be translated under Section 203 even if they are for informational purposes. *United States v. Metro. Dade Cty., Fla.*, 815 F. Supp. 1475, 1478 (S.D. Fla. 1993).

10. According to the 2018 American Community Survey 5-Year Estimate, there are 13,937 limited English proficient Spanish speaking citizens of voting age in Gwinnett County, out of 40,576 total LEP Spanish speakers in the county.  Enos Decl. ¶¶ 8-9.

11. The Section 203 rights of Plaintiffs Ruiz Torres and Mendez, and other LEP Gwinnett County voters such as Romero, Alvarez, and Moreno are being violated; they cannot read English, have not completed their English-only applications, and are entitled to a bilingual application under the statute.  Ruiz Torres Decl. ¶¶ 17-20; Mendez Decl. ¶¶ 17-20; Romero Decl. ¶ 13; H. Alvarez Decl. ¶¶ 16-18, 21; Moreno Decl. ¶¶ 15-17, 20.

12. Gwinnett County must provide equal access to the voting process when the Secretary of State's office mails absentee ballot applications or other materials to county voters.  *See* 28 C.F.R. 55.10(c) (providing that for "elections

for an office representing more than one county . . . the bilingual requirements are applicable on a county-by-county basis").

13. According to the applicable Department of Justice regulation, "a county subject to the bilingual requirements must insure compliance with those requirements with respect to all aspects of the election." 28 C.F.R. 55.10(b). Such an interpretation, moreover, is "consistent with the central purpose of Section 203 of the Voting Rights Act." *Metro. Dade Cty.*, 815 F. Supp. at 1478.

14. Under Georgia law, the Gwinnett BORE has authority over the county's absentee ballot application processes. *See* O.C.G.A. §§ 21-2-381(a)(1)(A) (applications must be submitted to "registrar's or absentee ballot clerk's office"), 21-2-381(b)(1) (requiring the "registrar or absentee ballot clerk" to determine applicants' eligibility).

15. Election materials disseminated to Gwinnett County voters must be bilingual. *See Lopez v. Monterey County*, 525 U.S. 266, 282 (1999) (holding that a covered county was required to submit a state law for preclearance under Section 5 of the VRA "notwithstanding the fact that the State is not itself a covered jurisdiction"); *Florida v. United States*, 885 U.S. 299, 348-49 (D.D.C. 2012) (Section 5 applies to state acts "to the extent that that law affects voting in jurisdictions properly designated for coverage," even if the state is not covered

13

itself); *Quiver v. Nelson*, 387 F. Supp. 2d 1027, 1033 (D.S.D. 2005) (three-judge district court) (same); *United Ossining Party v. Hayduk*, 357 F. Supp. 962, 968 (S.D.N.Y. 1971) (same).

16. Section 4(e) mandates protection of the voting rights of non-English speaking U.S. citizens and forbids conditioning the right to vote of persons educated in an American-flag school on their degree of fluency in English. *See* 52 U.S.C. § 10303(e)(2).

17. Under the statute, no jurisdiction can deny the right to vote based on voters' "inability to read, write, understand, or interpret" English. *Id*.

18. The statute therefore applies squarely to the Georgia Secretary of State (in addition to the Gwinnett County BORE). *Madera v. Detzner*, 325 F. Supp. 3d 1269, 1276-78 (N.D. Fla. 2018) (holding the Florida Secretary of State liable under Section 4(e) for 32 counties' failure to provide bilingual materials).

19. The language of Section 4(e) does not apply only to jurisdictions that meet certain population thresholds. *Madera v. Detzner*, 325 F. Supp. 3d 1269, 1279-81 (N.D. Fla. 2018) (holding Section 4(e) applies in Wakulla and Taylor Counties, with approximately 24 and 4 Puerto Rican voters).

20. County voters Plaintiff Ruiz Torres and Plaintiff Mendez are being violated; they cannot read English, they have not completed their English-only

absentee ballot application, and they are entitled to a bilingual application under the statute.  Ruiz Torres Decl. ¶¶ 17-20; Mendez Decl. ¶¶ 17-20.

21.     They, and the thousands of other Puerto Rico-educated voting age citizens who are registered to vote in Gwinnett County, must be given equal access to the electoral process and are entitled to bilingual written materials.  *See, e.g.*, *Arroyo v. Tucker*, 372 F. Supp. 764, 768 (E.D. Pa. 1974).

22.     Section 4(e) applies to materials that are information in nature because the right to vote under the statute "encompasses the right to an effective vote." *PROPA v. Kusper*, 490 F.2d 575, 580 (7th Cir. 1973).  Voters have "the right to be informed as to which mark on the ballot, or lever on the voting machine will effectuate the voter's political choice." *Id*. at 579; *Madera*, 325 F. Supp. 3d at 1279; *Torres v. Sachs*, 381 F. Supp. 309, 312 (S.D.N.Y. 1974).

23.     Section 4(e) requires that jurisdictions provide instructions, ballots, and "any other material which forms part of the official communication to registered voters prior to an election" in Spanish.  *Id*. at 312; *see also United States. v. Berks Cty.*, 250 F. Supp. 2d 525, 528 (E.D. Pa. 2003).

24.     A failure to provide any necessary voting material in Spanish violates Section 4(e).  *See id*. at 537 (finding probability of success on Section 4(e) claim seeking to have bilingual ballots and voting materials provided in 45 precincts).

25. Providing English-only absentee ballot applications will impose irreparable harm on Plaintiffs Ruiz Torres and Mendez, as well as the organizational Plaintiffs that are attempting to prevent the disenfranchisement of LEP voters in the upcoming primary. "The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm." *Jones v. Governor of Florida*, 950 F.3d 795, 828 (11th Cir. Feb. 19, 2020).

26. The balance of hardships clearly weighs in favor of Plaintiffs, particularly Plaintiffs Ruiz Torres and Mendez, and in favor of granting the requested relief herein. *See Jones v. Governor of Florida*, 950 F.3d 795, 829 (11th Cir. 2020) (concluding administrative burdens and other state "interests, while significant, are unavailing as compared to the plaintiffs' interest in their opportunity to exercise the core democratic right of voting").

27. The public interest is best served by permitting Plaintiffs Ruiz Torres and Mendez, as well as other LEP Gwinnett County voters such as Messrs. Romero, Alvarez, and Moreno, to read their absentee ballot application and have a meaningful opportunity to vote, thereby preserving this fundamental right and fostering trust in the integrity of elections. *See Jones*, 950 F.3d at 831 (holding the public "has every interest in ensuring that their peers who are eligible to vote are able to do so").

## **PROPOSED ORDER**

Upon consideration of the briefs and evidence submitted, Plaintiffs' Motion for Preliminary Injunction is hereby **GRANTED**, and it is hereby **ORDERED** that, pending final judgment on the merits, Defendants are **ENJOINED** from sending English-only absentee ballot applications or other materials to Gwinnett County voters in advance of the June 2020 primary and shall:

1. Mail an accurately translated bilingual absentee ballot application to Plaintiffs Albert Mendez and Limary Ruiz Torres; and

2. Mail an accurately translated bilingual absentee ballot application to Gwinnett County voters who were sent English-only applications or, alternatively, to all Gwinnett County voters who self-identified as "Hispanic/Latino" when they registered to vote and all voters residing in all Gwinnett County precincts for which at least five percent of voters identified as Hispanic on their voter registration cards without any further delay and with appropriate public notice.

**DONE** and **ORDERED** this _____ day of _____.

_____
Judge William M. Ray, II
United States District Court
Northern District of Georgia

Prepared by:

**/s/ Bryan L. Sells**
BRYAN L. SELLS
Georgia Bar #635562
The Law Office of Bryan L. Sells, LLC.
P.O. Box 5493
Atlanta, GA  31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com

**Ezra Rosenberg**
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
Email: erosenberg@lawyerscommittee.org

**Julie Houk**
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8391
Email:  jhouk@lawyerscommittee.org

**John Powers**
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8389
Email:  jpowers@lawyerscommittee.org

*Counsel for Plaintiffs*