**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA ASSOCIATION OF LATINO ELECTED OFFICIALS, INC., et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS, et al.,<br><br>  Defendants. | CIVIL ACTION FILE NO.:<br><br>1:20-cv-1587-WMR |

**ORDER**

Gwinnett County Board of Registrations and Elections ("Gwinnett BOE") is subject to federal law that requires that it provide its election and voting related materials in Spanish given the significant percentage of its voters who speak and read the Spanish language. Indeed, as a resident of Gwinnett County for 30 years and having formerly served as a Judge of the Superior Court of Gwinnett County, the Presiding Judge is intimately familiar with the diversity of Gwinnett County. The central issue in this lawsuit really isn't about what Gwinnett BOE did, but rather,

about what Georgia Secretary of State Brad Raffensperger did (or didn't do) when he sent absentee ballot applications to all Georgia registered voters (including those in Gwinnett County) in English only.  However, neither Secretary Raffensperger nor the State of Georgia is subject to the federal provisions that apply to Gwinnett BOE.

Plaintiffs argue that this shouldn't matter.  They contend that the Secretary of State assumes the obligations imposed upon Gwinnett BOE even when he unilaterally decides to communicate with voting citizens of Gwinnett County about election matters and that he was required to send a Spanish version of the absentee ballot application, or alternatively, that when the Secretary sent absentee ballot applications to Gwinnett voters in English only that it triggered a duty upon Gwinnett BOE to follow-up with a similar communication in Spanish.  The end result sought by Plaintiffs seems reasonable and a desirable outcome.  It may very well be the best public policy, particularly in a place like Gwinnett County that enjoys such rich diversity.  The problem with this argument, however, is that it is not the law.  And, it is not the job of this Court to write the law or to decide this case in favor of the party who articulates the most desirable outcome.  The Court must follow the law as written and leave the policy decisions for others.

As such, the Court concludes that Plaintiffs are not likely to succeed on the merits of their lawsuit. Accordingly, the Court denies Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 17].[1]

## I.   FACTUAL BACKGROUND

On March 15, 2020, in light of the ongoing public health crisis, Secretary Raffensperger postponed Georgia's presidential primary election from March 24 to May 19, combining the presidential primary with the previously scheduled primary date for other offices. [Doc. 13 at ¶ 25]. Following Governor Brian Kemp's decision to extend the state of emergency in Georgia until May 13, Secretary Raffensperger again postponed the presidential primary from May 19 to June 9. [*Id.* at ¶¶ 27-28; Doc. 17-2 (hereinafter "Powers Decl."), Exhibits 19, 23]. Secretary Raffensperger explained that the additional time would allow officials to finalize contingency plans and find additional poll workers. [Doc. 13 at ¶ 28; Powers Decl., Exhibit 19]. During the week of March 30, Secretary Raffensperger also began mailing out English-only absentee ballot applications to all Georgia registered voters, including

---

[1] While it is generally the Court's practice to have an evidentiary hearing when considering whether to grant a preliminary injunction, the Court notes that this motion was filed in the midst of and because of the disruption that the Coronavirus epidemic has imposed on our society, making an evidentiary hearing impractical. Further, the relevant facts seem rather straightforward and not in dispute. And, the Court is unaware that any party has requested an evidentiary hearing.

3

those in Gwinnett County, to encourage them to vote by mail in the upcoming election due to the health risks posed by in-person voting. [Doc. 13 at ¶¶ 2, 29; Powers Decl., Exhibit 8].

Plaintiffs Limary Ruiz Torres and Albert Mendez (the "Individual Plaintiffs") are limited-English proficient ("LEP") Gwinnett County voters who were educated in Spanish-speaking schools in Puerto Rico. [Doc. 13 at ¶¶ 7, 18, 19]. The Individual Plaintiffs claim that they received English-only absentee ballot applications by mail and are unable to read them. [*Id.*]. To date, the Individual Plaintiffs have not completed the application. [*Id.*].[2] The remaining Plaintiffs, the Georgia Association of Latino Elected Officials, Inc.; the Georgia Coalition for the People's Agenda, Inc.; Asian Americans Advancing Justice – Atlanta, Inc.; the New Georgia Project; and Common Cause (the "Organizational Plaintiffs"), are organizations engaged in "get out the vote" activities and other voter registration efforts. [*Id.* at ¶¶ 13-17]. On April 13, 2020, Plaintiffs filed suit against Gwinnett BOE and several of its individual members (together, the "Gwinnett Defendants"), as well as Secretary Raffensperger, alleging violations of Sections 203 and 4(e) of the Voting Rights Act ("VRA"), 52 U.S.C. §§ 10503, 10303, and seeking declaratory

---

[2] The Court notes the irony of the Individual Plaintiffs being unable to read and complete the absentee ballot application, but nonetheless being capable of finding their place as plaintiffs in this lawsuit.

and injunctive relief. [Doc. 1]. Four days later, Plaintiffs filed an Amended Complaint. [Doc. 13].

On April 20, 2020, Plaintiffs filed the present Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 17] asking this Court to (1) enjoin all continuing violations of Section 203 of the VRA by the Gwinnett Defendants and Section 4(e) of the VRA by all Defendants; (2) require the mailing of "an accurately translated bilingual absentee ballot application" to the Individual Plaintiffs; and (3) require the mailing of "an accurately translated bilingual absentee ballot application to Gwinnett County voters who were sent English-only applications, or, alternatively, to all Gwinnett County voters who self-identified as 'Hispanic/Latino' when they registered to vote and all voters residing in Gwinnett County precincts for which at least five percent of voters identified as Hispanic on their voter registration cards without any further delay and with appropriate public notice." [*Id*. at 2].

The Gwinnett Defendants oppose Plaintiffs' request for injunctive relief, arguing that they have no duty under the VRA to mail out bilingual absentee ballot applications to Gwinnett County voters because the Secretary of State, not Gwinnett BOE, provided the English-only voting materials in question. [Doc. 24 at 2]. Secretary Raffensperger also opposes Plaintiffs' request on the basis that Section

5

203 of the VRA does not apply to him and Section 4(e) of the VRA does not require him to provide bilingual ballot applications to Gwinnet County voters [Doc. 26 at 15].

## II. LEGAL STANDARD

To prevail on their request for a preliminary injunction, Plaintiffs must show (1) a substantial likelihood of success on the merits of their claims; (2) that they will suffer irreparable harm absent the injunction; (3) that the harm suffered by Plaintiffs in the absence of the injunction outweighs the harm suffered by Defendants if the injunction is issued; and (4) that the injunction would not disserve the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010) (quoting *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008)). "To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in [the movant's] favor." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). However, courts may not grant such relief "unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (quoting *All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). At this stage, "a district court may rely on

affidavits and hearsay materials . . . if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co.*, 51 F.3d at 985 (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

## III.   DISCUSSION

Assuming Plaintiffs can establish standing to bring this lawsuit,[3] they must ultimately satisfy the four requisites for a preliminary injunction to prevail on their Motion.  Thus, the Court begins its analysis by addressing whether Plaintiffs have shown they are likely to succeed on the merits of their claims.  Upon the Court's review of the record and the parties' briefing, it concludes they have not.  As such, the Court cannot issue the requested injunctive relief.

Plaintiffs' success in this case ultimately hinges on whether the Gwinnett Defendants have some duty under the VRA to correct, or supplement, the voting materials independently sent out by Secretary Raffensperger to Gwinnett County voters.  Plaintiffs are correct, and Defendants do not dispute, that Gwinnett County is a "covered political subdivision" under Section 203 of the VRA.  52 U.S.C. § 10503(b)(2).   Pursuant to Section 203's "[b]ilingual election requirements,"

---

[3] Because the Court concludes herein that the Plaintiffs are unlikely to succeed on the merits on this action, the Court does not address the issue of standing at this time. However, as this lawsuit moves forward, the Court will address the Defendants' allegation that both the Individual Plaintiffs and the Organizational Plaintiffs do not have standing to pursue their claims.

Gwinnett County, as a covered subdivision, cannot "provide voting materials only in the English language." 52 U.S.C. § 10503(b)(1). Whenever a covered jurisdiction, such as Gwinnett County, "provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process," it must "provide them in the language of the applicable minority group as well as in the English language." 52 U.S.C. § 10503(c). For Gwinnett County, the "language of the applicable minority group" is Spanish.

The problem with Plaintiffs' theory in this case, however, is that Section 203's requirements only apply "[w]henever a State or political subdivision subject to the prohibition of subsection (b) of this section ***provides***" the voting materials in question. *Id.* (emphasis added). Here, Secretary Raffensperger unilaterally mailed out the absentee ballot applications to Georgia voters, including those in Gwinnett County, without any coordination or involvement with the Gwinnett Defendants whatsoever.[4] In other words, despite being a "covered political subdivision" for

---

[4] In their Reply Brief, Plaintiffs rely upon coordination between the Secretary of State and Gwinnett BOE officials in sending out the 2019 "last chance" notices and the absentee ballots for the upcoming primary. [*See* Doc. 30 at 12-14]. Plaintiffs, however, failed to allege any coordination between Secretary Raffensperger and the Gwinnett Defendants as it relates to the mailing at issue in this case, the absentee ballot *applications*. In fact, Plaintiffs explicitly concede there was no coordination as to the applications. [*Id.* at 14 ("For two of these three mailings, the Secretary coordinated with Gwinnett [BOE] officials to comply with Section 203; here, he did not.")].

8

purposes of the statute, Gwinnett County did not "provide" the voting materials in question, and, as such, has no duty under the VRA to send out bilingual absentee ballot applications to Gwinnett County voters.[5]

Plaintiffs cite to no cases, and the Court finds none, where a court has interpreted Section 203 of the VRA to require an otherwise inactive jurisdiction to correct or supplement voting materials independently distributed by another governmental entity. Instead, courts focus on who provided the voting materials at issue and whether that entity is a covered jurisdiction under the statute. *See, e.g., Delgado v. Smith*, 861 F.2d 1489, 1490, 1496-97 (11th Cir. 1988) (holding that a State's involvement in the administration of a citizen initiative to amend the state constitution, which included the State's approval of the form of the petition and the State's submission of the petition to the State Supreme Court for an advisory opinion, was not sufficient state action to trigger any obligation under Section 203 of the VRA); *Padilla v. Lever*, 463 F.3d 1046, 1051 (9th Cir. 2006) (explaining that a State's regulation of the format of recall petitions "does not mean that the petitions are *provided* by the State or subdivision" within the meaning of the VRA); *Montero v. Meyer*, 861 F.2d 603, 609-10 (10th Cir. 1988) (analyzing whether the petitions at

---

[5] Plaintiffs do not appear to allege or argue that the State of Georgia is a covered jurisdiction under Section 203 of the VRA.

issue were, in fact, provided by the State to the electorate when determining whether plaintiffs were likely to succeed on the merits of their Section 203 claim).

Regarding Plaintiffs' claims under Section 4(e) of the VRA, the Court concludes those claims similarly lack merit.  To protect the Fourteenth Amendment rights of "persons educated in American-flag schools in which the predominant classroom language was other than English," Section 4(e) prohibits "the States from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language."  52 U.S.C. § 10303(e)(1).  Here, the Court identifies no allegations from which it can be inferred that the Gwinnett Defendants or Secretary Raffensperger are "conditioning the right to vote" on a voter's ability to use the English language.

Regarding the Gwinnett Defendants, any voting materials they have provided to Gwinnett County voters have been in Spanish pursuant to their obligations as a "covered political subdivision" under Section 203 of the VRA.  It was Secretary Raffensperger, not the Gwinnett Defendants, who mailed out the English-only applications at issue in this case.  Additionally, there are no allegations that the Gwinnett Defendants are somehow prohibiting Gwinnett County voters from otherwise choosing to vote in-person on June 9.

Further, regarding Secretary Raffensperger, the Court finds that his mailing of English-only absentee ballot applications to Georgia voters did not transform the election into an "English-only election process" sufficient to give rise to Section 4(e) liability.  *See United States v. Berks Cty.*, 277 F. Supp. 2d 570, 579 (E.D. Pa. 2003) (granting an injunction where a jurisdiction used an English-only election process and where poll workers made discriminatory and hostile remarks to Hispanic and LEP voters, treated Hispanic voters differently than other voters with regard to voter identification requirements, and otherwise discouraged and prohibited Hispanic voters from participating in the election process).  Here, despite the mailing of the English-only applications, absentee ballots will be sent in English and Spanish pursuant to Gwinnett County's obligations under Section 203.  There is also a Spanish absentee ballot application on Gwinnett County's website.  And, as noted above, Gwinnett County voters are still able to vote in-person on June 9.  As such, the Court finds Plaintiffs are not likely to succeed on the merits of their Section 4(e) claims against the Gwinnett Defendants or Secretary Raffensperger.

Because the Court finds that Plaintiffs have not demonstrated they are likely to succeed on the merits of their claims in this case, it need not determine whether Plaintiffs can establish the remaining three requisites for the issuance of a preliminary injunction.  The Court, however, expresses doubt that Plaintiffs could

do so.  For example, it is unlikely the Individual Plaintiffs will suffer irreparable harm in the absence of an injunction, as it appears that they have now received bilingual applications from Gwinnett BOE.  The Individual Plaintiffs, and others like them, may also choose to vote in-person on June 9 if they are unable to vote absentee.  Further, the Organizational Plaintiffs' need to switch from "get out the vote" efforts to education about absentee ballots is a result of the ongoing health crisis and its impact on in-person voting, not Secretary Raffensperger's decision to mail out English-only applications to Georgia voters.  And, while the Court recognizes that it may serve the public interest to provide bilingual applications to voters in Gwinnett County, the Court is not convinced that the balance of equities clearly weighs in favor of Plaintiffs.  If the Court issued the injunction as requested by Plaintiffs, Gwinnett County would potentially be forced to expend significant taxpayer funds duplicating all English-only voting materials sent out by Secretary Raffensperger in the future.

In sum, the result sought by Plaintiffs is a desirable outcome rooted in valid public policy concerns.  Plaintiffs, however, ask this Court to read beyond the plain language of the VRA to impose duties upon the Gwinnett Defendants and Secretary Raffensperger that do not currently exist under the law as written.  As such, the Court

finds Plaintiffs are unlikely to succeed on the merits of their claims in this lawsuit, and, therefore, have failed to meet their burden for a preliminary injunction.

## IV. CONCLUSION

In light of the foregoing, the Court finds that Plaintiffs are not likely to succeed on the merits of their claims, and, therefore, are not entitled to a temporary restraining order or a preliminary injunction. Accordingly, the Court hereby **DENIES** Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 17].[6]

**IT IS SO ORDERED**, this 8th day of May, 2020.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

---

[6] Following the submission of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 17] for consideration by this Court, Secretary Raffensperger filed a Motion to Strike [Doc. 31] asking the Court to strike new declarations and legal arguments raised in Plaintiffs' Reply Brief or, alternatively, to grant Secretary Raffensperger leave to file a surreply brief. In light of this Order denying Plaintiffs' request for injunctive relief, the Court finds that Secretary Raffensperger's Motion to Strike is now moot. Accordingly, the Motion to Strike [Doc. 31] is hereby **DENIED**.