**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GEORGIA ASSOCIATION OF
LATINO ELECTED OFFICIALS,
INC., *et al.*

      Plaintiffs,

v.

GWINNETT COUNTY BOARD OF
REGISTRATIONS AND
ELECTIONS, *et al.*,

      Defendants.

CIVIL ACTION FILE NO:

1:20-CV-01587-WMR

## <u>ORDER</u>

Gwinnett County Board of Registrations and Elections ("Gwinnett BOE") is subject to federal law that requires it to provide its election and voting-related materials in Spanish given the significant percentage of its voters who speak and read the Spanish language.  Plaintiffs allege that Georgia Secretary of State Brad Raffensperger's statewide distribution (particularly to Gwinnett County) of English-only absentee ballot applications and maintenance of its website and public notices in English-only violated the federal provisions that apply to Gwinnett County. In the alternative, Plaintiffs allege that the Secretary's actions triggered some duty of the Gwinnett BOE to provide similar communications in Spanish.

1

Plaintiffs' requests for relief, however, ask this Court to read beyond the plain language of the Voting Rights Act ("VRA") to impose duties upon Secretary Raffensperger and Gwinnett BOE that do not currently exist under the law. Accordingly, this Court cannot find that either Secretary Raffensperger or Gwinnett BOE violated any applicable provision of the VRA. Further, irrespective of the claims' merits, the Individual and Organizational Plaintiffs lack standing to sue the Gwinnett BOE and Secretary Raffensperger.  None of them showed an injury in fact, and their alleged injuries are not traceable to, nor redressable by, the Gwinnett BOE and the Secretary. Thus, Plaintiffs have not established Article III standing, and their claims fail on the merits under the law.

Nonetheless, this Court recognizes that Plaintiffs' end goal of ensuring that Spanish-speaking Gwinnett voters receive bilingual absentee ballot applications is a reasonable and desirable outcome.  And, their argument that Secretary Raffensperger should have simultaneously sent Spanish applications to Gwinnett County, or that Gwinnett BOE should have supplemented the state's English-only applications, "may very well be the best public policy, particularly in a place like Gwinnett County that enjoys such rich diversity."  [Doc. 33 at 2].  Nonetheless, the plain language of the VRA simply does not require what the Plaintiffs allege here. As such, they do not have a claim under the law.  "It is not the job of this Court to

write the law or to decide this case in favor of the party who requests the most admirable outcome. [*Id.*] Rather, "the Court must follow the law as written and leave the policy decisions for others." [*Id.*].

Because Plaintiffs lack standing and fail to state a claim upon which relief could be awarded, the Court hereby **GRANTS** Defendants' Motions to Dismiss in their entirety.

## I.      FACTUAL BACKGROUND

On March 15, 2020, in light of the ongoing public health crisis, Secretary Raffensperger postponed Georgia's presidential primary election from March 24 to May 19, combining the presidential primary with the previously scheduled primary date for other offices. [Doc. 13 at ¶ 25]. Following Governor Brian Kemp's decision to extend the state of emergency in Georgia until May 13, Secretary Raffensperger again postponed the presidential primary from May 19 to June 9. [*Id*. at ¶¶ 27-28; Doc. 17-2 (hereinafter "Powers Decl."), Exhibits 19, 23]. Secretary Raffensperger explained that the additional time would allow officials to finalize contingency plans and find additional poll workers. [Doc. 13 at ¶ 28; Powers Decl., Exhibit 19]. During the week of March 30, Secretary Raffensperger also used CARES Act[1] funds

---

[1] In response to the COVID-19 pandemic, Congress passed legislation to provide emergency relief to workers, small businesses, and states. *See* Coronavirus Aid,

to mail English-only absentee ballot applications to all Georgia registered voters, including those in Gwinnett County, to encourage them to vote by mail in the upcoming election due to the health risks posed by in-person voting. [Doc. 13 at ¶¶ 2, 29; Powers Decl., Exhibit 8].

Plaintiffs Limary Ruiz Torres and Albert Mendez (the "Individual Plaintiffs") are limited-English proficient ("LEP") Gwinnett County voters who were educated in Spanish-speaking schools in Puerto Rico. [Doc. 13 at ¶¶ 7, 18, 19]. In their original Complaint, the Individual Plaintiffs claimed that they received English-only absentee ballot applications by mail, were unable to read them, and had yet to complete them. [*Id.*]. The remaining Plaintiffs, the Georgia Association of Latino Elected Officials, Inc.; the Georgia Coalition for the People's Agenda, Inc.; Asian Americans Advancing Justice– Atlanta, Inc.; the New Georgia Project; and Common Cause (the "Organizational Plaintiffs"), are organizations engaged in "get out the vote" activities and other voter registration efforts. [*Id.* at ¶¶ 13-17].

## II.   PROCEDURAL HISTORY

On April 13, 2020, Plaintiffs filed suit against Gwinnett BOE and several of its individual members (together, the "Gwinnett Defendants"), as well as Secretary

---

Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).

Raffensperger, alleging violations of Sections 203 and 4(e) of the Voting Rights Act ("VRA"), 52 U.S.C. §§ 10503, 10303, and seeking declaratory and injunctive relief. [Doc. 1].  Four days later, Plaintiffs filed an Amended Complaint.  [Doc. 13].

Plaintiffs then filed a Motion for a Temporary Restraining Order and Preliminary Injunction on April 20, 2020, [Doc. 17], asking this Court to (1) enjoin all continuing violations of Section 203 of the VRA by the Gwinnett Defendants and Section 4(e) of the VRA by all Defendants; (2) require the mailing of "an accurately translated bilingual absentee ballot application" to the Individual Plaintiffs; and (3) require the mailing of "an accurately translated bilingual absentee ballot application to Gwinnett County voters who were sent English-only applications, or, alternatively, to all Gwinnett County voters who self-identified as 'Hispanic/Latino' when they registered to vote."  [*Id.* at 2].

The Gwinnett Defendants opposed Plaintiffs' request for injunctive relief, arguing that they have no duty under the VRA to mail out bilingual absentee ballot applications to Gwinnett County voters because the Secretary of State, not Gwinnett BOE, provided the English-only voting materials in question.  [Doc. 24 at 2]. Secretary Raffensperger also opposed Plaintiffs' request on the basis that Section 203 of the VRA does not apply to him and Section 4(e) of the VRA does not require

that he provide bilingual ballot applications to Gwinnet County voters [Doc. 26 at 15].

On May 8, 2020, this Court denied Plaintiffs' Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction [Doc. 33] on the grounds that Plaintiffs did not meet the standard for a preliminary injunction, largely because Plaintiffs did not prove they were likely to succeed on the merits of their claims.[2] Following this Order, Plaintiffs filed a Second Amended Complaint. [Doc. 36].

Plaintiffs claim that (1) both Gwinnett BOE and Secretary Raffensperger had a responsibility to provide bilingual absentee ballot applications when and because Secretary Raffensperger sent applications statewide—including into Gwinnett County—and (2) both violate the VRA on a continuing basis by failing to make various materials available in Spanish, particularly on the Secretary of State's website and in public notices.  [*Id.* at ¶¶ 1-10]. Plaintiffs emphasized that this action only concerns Spanish speaking voters in Gwinnett County under Section 203 of the VRA and Gwinnett County LEP voters educated in Puerto Rico under Section 4(e)

---

[2] Because this Court concluded that the Plaintiffs were unlikely to succeed on the merits of their action, it did not address the issue of standing at that time.  [*Id.* at 7]. It noted that it would address the Defendants' allegation that both the Individual Plaintiffs and the Organizational Plaintiffs do not have standing to pursue their claims as the lawsuit progressed.  [*Id.* at 7, n.3].

of the VRA.  [*Id.* at 2].  Plaintiffs also point out that Secretary Raffensperger sent another set of English-only absentee ballot applications on or around April 21, 2020, and that he had mentioned in his April 15 application for CARES Act funding that his office "may consider providing similar services for the primary runoff and November General Election."  [*Id.* at ¶ 5].

The Individual Plaintiffs acknowledge that Gwinnett BOE mailed them bilingual absentee ballot applications for the June 9, 2020 primary election.  [*Id.* at ¶¶ 20-21].  Both received the applications and were able to complete them, and neither allege that they were prevented from successfully casting their ballot in the June 9, 2020 primary election.  [*Id.*].  Plaintiffs also acknowledge that a bilingual absentee ballot application is available on the Gwinnett BOE website.  [*Id.* at ¶ 61]. But, they note that the link to the Spanish language version of the application is mislabeled with "In English," although this link connects voters to the Spanish language version of the form.  [*Id.* at ¶ 63].

In their Prayer for Relief, Plaintiffs sought declaratory and injunctive relief and asked this Court to (1) find that Defendants violated Sections 203 and 4(e) of the VRA; (2) enjoin "all continuing violations of Sections 203 and 4(e) of the Voting Rights Act by Defendants"; (3) compel the mailing of "an accurately translated bilingual absentee ballot application" to "Gwinnett County voters such as Plaintiffs

Mendez and Torres when requested in future elections or, alternatively, to all Gwinnett County voters who self-identified as 'Hispanic/Latino' when they registered to vote and all voters residing in Gwinnett County precincts for which at least five percent of voters identified as Hispanic on their voter registration cards;" and (4) require the provision of bilingual versions of election-related information published on the Secretary of State's website and the Georgia My Voter Page and sent to nursing homes in Gwinnett County." [*Id.* at p. 30, ¶¶ 2-4].

Both Defendants then filed the present Motions to Dismiss on June 20, 2020. [Doc. 38; Doc. 39]. The Gwinnett Defendants argue that both the Individual and Organizational Plaintiffs lack standing because they do not have an injury, and even if they did, it is not traceable to nor redressable by Gwinnett Defendants. [Doc. 38-1 at 4-12]. They also contend that Plaintiffs fail to state a claim because Gwinnett BOE did not "provide" the voting materials in question here and thus did not violate the applicable federal law. [*Id.* at 12-18]. In a separate yet similar argument regarding this case's justiciability, Secretary Raffensperger contends that (1) the Individual Plaintiffs' claims are moot; (2) the Organizational Plaintiffs do not have an injury; and (3) any injury suffered by all Plaintiffs is not traceable to the Secretary of State. [Doc. 39-1 at 7-18]. Secretary Raffensperger also asserts that Plaintiffs fail to state a claim because Section 203 of the VRA does not apply to the state of

Georgia (and thus not to him as the Secretary of State) and that Section 4(e) of the VRA does not require him to translate the materials at issue here. [*Id.* at 18-25].

Plaintiffs responded to both Motions to Dismiss in one brief on July 20, 2020, stressing that their Second Amended Complaint broadly alleges that Defendants are failing to provide numerous election materials. [Doc. 44 at 30]. Both the Gwinnett Defendants and Secretary of State filed Reply Briefs in Support of their Motions to Dismiss on August 3, 2020. [Doc. 46; 47]. On August 18, 2020, this Court held a Zoom hearing to consider the Defendants' Motions to Dismiss.

After that, Plaintiffs filed a Motion for Leave to File a Supplemental Complaint on September 11, 2020. [Doc. 53-1]. In their motion, Plaintiffs seek to supplement the Second Amended Complaint to include two new developments: (1) the Georgia Secretary of State's office launched an English-only online absentee ballot application portal and (2) "the Gwinnett County Commissioners voted against mailing absentee ballot applications to all active registered voters in Gwinnett County." [*Id.* at 2].

## III.  LEGAL STANDARD

### A. Motion to Dismiss for Lack of Standing

To invoke federal jurisdiction under Article III of the Constitution, a litigant must establish that the case it brings is an appropriate "case or controversy" for the

federal court to hear. U.S. CONST., Art. III § 2. A "case or controversy" first requires Plaintiffs to demonstrate that they have standing to file suit, "which requires proof of three elements." *Jacobson v. Fla. Sec'y of State*, No. 19-14552, 2020 WL 5289377, at *4 (11th Cir. Sept. 3, 2020) (citing *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)). "The litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "And when plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are "certainly impending." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). Further, "[b]ecause standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp*., 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991).

### B. Motion to Dismiss Under Fed R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs satisfy the

10

plausibility standard by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Establishing plausibility requires more than a "sheer possibility that a defendant has acted unlawfully;" however, a complaint that "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 557).  For purposes of a motion to dismiss, this Court must assume the truth of Plaintiffs' factual allegations, but it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678-89 (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

## IV.    JUSTICIABILITY ANALYSIS

Both the Individual and Organizational Plaintiffs lack standing because neither established an injury in fact and, even if they had, that injury would not be traceable to, nor redressable by, Defendants Raffensperger or Gwinnett BOE. Moreover, Plaintiffs' claims no longer present a live controversy and are therefore rendered moot.

### A. Plaintiffs Do Not Have Article III Standing to Pursue Their Claims.

### 1.    Plaintiffs Have Not Established Injury in Fact.

The Individual Plaintiffs have not demonstrated that they suffered an injury in fact. It is true that that "'a person's right to vote is individual and personal in nature,' so 'voters who allege facts showing disadvantage to themselves as individuals'" typically will have standing to sue. *Jacobson*, at *5 (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). However, when seeking declaratory or injunctive relief, as the Plaintiffs do here,[3] litigants "must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural—threat of *future* injury.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir.1994) (citation omitted) (emphasis in original).  Here, Gwinnett BOE sent both Individual Plaintiffs bilingual absentee-ballot applications, and both were able to complete these applications.[4]  [Doc. 36, ¶¶ 20-21]. Thus, the Secretary's failure to send an English-

---

[3] Oral Argument q and 2nd Am complaint

[4] Initially, the Individual Plaintiffs rested their claims on not having received Spanish absentee ballot applications.  [Doc. 13, ¶¶ 18-19].  But in their Second Amended Complaint, Plaintiffs acknowledged that they had received and completed bilingual applications.  [Doc. 36, ¶¶ 20-21].

only ballot application did not cause the Individual Plaintiffs to suffer an injury in fact.

But, they also allege that "if [they are] sent an English-only absentee ballot application in the future, [they] will not be able to understand it." [Doc. 36, ¶¶ 20-21]. Thus, Plaintiffs' arguments are not based on actual injury suffered in this case, but rather on speculative injuries they *may* suffer in the future. Plaintiffs, however, have not alleged that there is a "substantial likelihood" they actually will suffer injury in the future. *Id.* (quoting *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir.1999) (citations omitted)). They have merely alleged that there is *some* chance the Plaintiffs could be harmed; "*if* [Plaintiffs are] sent English-only applications" again, that they will not be able to comprehend them. [Doc. 38-1 at 7]. This remote risk of harm is too speculative to warrant Article III standing.

Moreover, the fact that the Georgia Secretary of State website and new online absentee ballot application portal operate in English only does not sufficiently injure Plaintiffs for Article III standing. [Doc. 36 at 21; Doc. 53-1 at 9]. The Secretary of State is not covered under the statutes of the VRA requiring it to provide this information to Gwinnett County voters in Spanish. Instead, Gwinnett County is under the obligation to do so when it provides this information to its voters, and Plaintiffs admit that Gwinnett County has made a bilingual absentee-ballot

application available on its website. There is also a Spanish-language computer translated version of Gwinnett County's website that Plaintiffs may use; and although it has a few imperfections that can be corrected,[5] Plaintiffs are not effectively prevented from receiving the information they need to be able to vote and therefore do not suffer any injury that can be redressed by this Court.

In a similar vein, the Organizational Plaintiffs fail to establish that they have an injury in fact. An organization can establish injury in fact under a "diversion of resources" theory, which predicates standing on the fact that "a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982)). Although diversion can be a concrete injury, Plaintiffs in this case have not sufficiently alleged that they have been injured on those grounds, despite arguments to the contrary in their briefings.

First, Plaintiffs have not established that Defendants engaged in any illegal activity forcing them to divert resources. As discussed above and below, Gwinnett

---

[5] "To access a Spanish-language computer-translated version of the website, voters have to find a small box marked 'English >' at the bottom right hand corner of the Gwinnett County BORE's webpage." [Doc. 36 at 23].

14

Defendants did not violate any statute and thus were under no duty to provide additional absentee-ballot applications after the Secretary of State did so. Further, because Secretary Raffensperger is not covered by the language under the statutes, he also was under no duty to provide ballot applications in the form that Plaintiffs request. Since no illegal acts have been alleged, Plaintiffs do not meet the first requirement under the diversion of resources theory.

Even if they had, Plaintiffs have not sufficiently alleged what they would have to "divert resources away *from* in order to spend additional resources on combatting" the effects of Secretary Raffensperger's ballot application distribution. *Jacobson*, at *9. GALEO's overarching purpose is to protect the civil rights of Georgia's Latino community by, among other things, "organizing voter education, civic engagement, [and] voter empowerment." [Doc. 36 at 6-7]. Specifically, GALEO has already been "working to address challenges facing Gwinnett County's LEP Spanish speaking voters as a result of the impact of the COVID-19 pandemic." [*Id.* at 7]. Thus, there is no indication that GALEO would in fact be diverting any resources away from the core activities it already engages in by continuing to educate and inform Latino voters. Plaintiffs allege that "GALEO is diverting resources from getting out the vote and voter education to 'reach[] out to and educat[e] [LEP Gwinnett voters] about how to navigate the mail voting process . . .

as well as other aspects of the electoral process.'" [Doc. 44 at 9]. But these other activities are precisely of the same nature as those that GALEO engaged in before the COVID-19 pandemic and continues to engage in now. Thus, Plaintiffs cannot prove that they have suffered an injury in fact under this theory.

An organization can also establish associational standing by proving "that its members 'would otherwise have standing to sue in their own right.'" *Jacobson* at *7. The "interests at stake must be germane to the organization's purpose," and the suit itself also must be one that does not require individual member participation. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Although the interests at stake in this suit are clearly germane to the organization's purpose, and the suit does not require individual member participation,[6] the standing argument fails because the organization cannot prove that its members have suffered injuries in fact for the reasons mentioned above. Simply because GALEO has "Spanish-speaking voters in Gwinnett County who receive[d] English-only materials" does not mean that the members themselves would have standing to sue when they have suffered no injury in fact. [Doc. 44 at

---

[6] Though voting is an individual right, Plaintiffs' request for "prospective, injunctive relief directed at election officials… does not require the Court to craft individual remedies, nor does it require every [GALEO] member affected to participate in the suit." *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1338 (N.D. Ga. 2018).

16

11]. Therefore, because individual members of the organizations would have no standing to sue, GALEO and the other Organizational Plaintiffs do not have standing to sue on their behalf.

### 2. Plaintiffs Cannot Demonstrate Causation and Redressability.

Even if Plaintiffs had been able to demonstrate injury in fact, they are unable to establish traceability and redressability. Causation is established by demonstrating that the Plaintiffs' harm is fairly traceable to the action of the Defendants. The harm here is not traceable to any action taken by Gwinnett County, since Secretary Raffensperger's office distributed the English-only applications and Gwinnett County provided bilingual applications after the fact that Plaintiffs were able to complete. Therefore, the harm that Plaintiffs allegedly suffered does not come directly from Gwinnett County. *Compare with Crittenden*, 347 F. Supp. 3d. 1324 at 1338 (finding that there was causation because "the Court can trace a direct line between Gwinnett's (or any county's) decision to reject an absentee ballot for missing information, when that information is not material to verifying a voter's identity, and the resulting injury when that person's vote is not counted.").

Although the harm Plaintiffs allege came from the actions of Secretary Raffensperger because his office provided the English-only ballot applications in

this case, the speculative harm that it will occur again is not directly traceable to the Secretary of State because "the Secretary simply does not conduct the elections at the county level." [Doc. 39-1 at 13]. Thus, "[b]ecause the [Secretary] didn't do (or fail to do) anything that contributed to [their] harm," the voters and organizations "cannot meet Article III's traceability requirement." *Jacobson*, at *11 (citing *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)).

Nonetheless, any potential harm cannot be redressed by an order of this Court. Secretary Raffensperger was under no legal obligation to provide the materials Plaintiffs request. Although it may have been good policy for Secretary Raffensperger to send out the applications in Spanish, he was not required to do so under the VRA, and Plaintiffs were able to complete bilingual applications despite having English-only ballot applications sent to them. Plaintiffs, therefore, do not have Article III standing.

### A. Plaintiffs' Claims Are Moot.

A case must be dismissed when the issues presented are "no longer live." *De La Teja v. United States,* 321 F.3d 1357, 1362 (11th Cir. 2003). However, there is an exception to the general mootness doctrine for cases that are capable of repetition yet evading review. This exception is "limited to the situation" where there is a "reasonable expectation that the same complaining party would be subjected to the

same action again," and where "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (internal quotations omitted). "The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018) (internal quotations omitted).

Here, Secretary Raffensperger is not likely to take the same challenged action again, such that it would subject Plaintiffs to the same alleged harm in the future. The facts in this case are unique because the federal government itself funded the mailing of the ballot applications under the CARES Act. Otherwise, this precise scenario involving a global pandemic is unfamiliar to our country, Secretary Raffensperger has never distributed these voting materials in the past, and there is no indication he will do so again. Specifically, Defendant Raffensperger has "stated no intention to" send absentee ballot applications again for the general election, and instead, has "professed the contrary intent," that he does not plan to do so. *Christian Coal. of Alabama v. Cole*, 355 F.3d 1288, 1292 (11th Cir. 2004). And, Raffensperger's indication likely "was not made so as to merely avoid a ruling by the federal court," but rather was made because this situation itself is inherently unique and unlikely to present itself again. *Id.* Moreover, the challenged action is

not too short in duration that it will evade meaningful judicial review. In fact, the action was subject to review in this case and would be capable of review again if it were to happen a subsequent time. Thus, it is not appropriate for the mootness exception to apply in this case.

## V.    MERITS ANALYSIS

### A.    Plaintiffs' Claims Under the Voting Rights Act Must be Dismissed Pursuant to F.R.C.P. 12(b)(6).

Even if Plaintiffs have standing, Plaintiffs still lose on the merits. As this Court described in its Order denying the Temporary Restraining Order, Secretary Raffensperger is not a "covered political subdivision" under the VRA and thus was under no duty to send the voting materials that Plaintiffs request. Nor is Secretary Raffensperger required to operate the Georgia Secretary of State website in Spanish. Consequently, Gwinnett Defendants had no duty to correct or supplement the voting materials independently sent out by Secretary Raffensperger. [Doc. 33 at 7]. Further, the actions taken by the Secretary of State do not amount to a "conditioning of the right to vote" on being able to understand and read English, such that it could be subject to liability under Section 4(e) of the VRA. The claims, therefore, must be dismissed.

### 1.  VRA Section 203

The Voting Rights Act of 1965 was enacted largely to remedy the systematic exclusion of African Americans from the polls through use of devices such as poll taxes and literacy tests. *See Delgado v. Smith,* 861 F.2d 1489, 1492 (11th Cir. 1988). It was later amended in 1975 to extend the Act's coverage to four other minority groups, including Hispanics. To advance the Act's purposes, any covered State or political subdivision is prohibited from applying or imposing any voting standard or practice "which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). Specifically, whenever a covered jurisdiction "provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process," it must "provide them in the language of the applicable minority group as well as in the English language." 52 U.S.C. § 10503(c).

Under Section 203 of the VRA, Gwinnett County is a "covered political subdivision." Thus, it cannot "provide voting materials only in the English language" and must provide them in the "language of the applicable minority group" in the county, which is Spanish. 52 U.S.C. § 10503(b)(1). These requirements, however, only apply "[w]henever a State or political subdivision subject to the

prohibition of subsection (b) of this section *provides*" the voting materials in question. *Id.* (emphasis added).

Gwinnett County did not provide the English-only voting materials to Gwinnett County voters in this case. Instead, Secretary Raffensperger unilaterally mailed out absentee-ballot applications in an English-only format, without any coordination or involvement with the Gwinnett Defendants. Therefore, Gwinnett County had no duty under the VRA to send out the bilingual applications to Gwinnett County voters because it did not "provide" the voting materials in question. If it had, the statutory requirements would quite plainly apply to Gwinnett County; but those are not the facts presented to this Court in this case.

Additionally, no case that Plaintiffs have cited, or that the Court has found, interprets Section 203 of the VRA to require an otherwise inactive jurisdiction to correct or supplement voting materials independently distributed by another governmental entity not subject to the VRA's requirements.[7] Courts instead focus on the entity that provided the materials and whether that entity is covered under the VRA. *See Delgado*, 861 F.2d at 1497-97 (holding that the State's involvement in the administration of a citizen initiative to amend the state constitution was not sufficient

---

[7] Plaintiffs do not appear to allege or argue that the State of Georgia is a covered jurisdiction under Section 203 of the VRA.

22

state action to trigger any obligation under Section 203 of the VRA);  *Padilla v. Lever*, 463 F.3d 1046, 1051 (9th Cir. 2006) (explaining that a State's regulation of the format of recall petitions "does not mean that the petitions are *provided* by the State or subdivision" within the meaning of the VRA); *Montero v. Meyer*, 861 F.2d 603, 609-10 (10th Cir. 1988) (analyzing whether the petitions at issue were, in fact, provided by the State to the electorate when determining whether plaintiffs were likely to succeed on the merits of their Section 203 claim).

Because Gwinnett County is the covered entity in this case and because it did not "provide" the materials in question, it had no duty to correct or supplement the Secretary's distribution. Moreover, Secretary Raffensperger was under no obligation in the first place to provide the bilingual applications because the State is not a covered jurisdiction under the Act. Therefore, Plaintiffs claims under Section 203 of the VRA cannot withstand a motion to dismiss.

Nothing in Plaintiffs' Motion to File a Supplemental Complaint alters that conclusion here. Because the State is not a covered entity under the statute, the fact that the Secretary's website and public notices operate in English-only does not impact the Secretary's or Gwinnett County's duties under the law. Section 203 applies based on the covered entity that provides the materials, "not the possibility that voters within a covered jurisdiction may see or come across materials coming

from outside it." [Doc. 39-1 at 21]. Thus, these claims brought under Section 3 of the VRA must be dismissed.

### 2.  VRA Section 4(e)

Under Section 4(e) of the VRA, Congress has "secure[d] the rights under the Fourteenth Amendment of persons educated in American-flag schools in which the predominant classroom language was other than English." 52 U.S.C. § 10303(e)(1). To protect these rights, Section 4(e) prohibits "the States from conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language." *Id.* In this case, Plaintiffs have alleged no facts supporting the conclusion that Gwinnett Defendants or Defendant Raffensperger are conditioning the right to vote on the voter's ability to use the English language.

Regarding the Gwinnett Defendants, any voting materials provided to Gwinnett County voters have been in Spanish pursuant to their obligations as a covered subdivision under the VRA. The English-only absentee-ballot applications were distributed by Secretary Raffensperger, not the Gwinnett Defendants. Moreover, Gwinnett County provided Plaintiffs with absentee-ballot applications in bilingual form after the Secretary's distribution, and Plaintiffs have been unable to establish that Gwinnett County is otherwise preventing its voters from voting in person on Spanish ballots in any future elections. Therefore, Gwinnett County has

not abrogated any of its responsibilities under the VRA and instead has done what it is required to do by law.

Similarly, Secretary Raffensperger did not violate Section 4(e) because his actions do not amount to "conditioning the right to vote" on being able to read or understand English. Although "the right to vote" clearly entails more than simply the "mechanics of marking a ballot or pulling a lever,"[8] it does not require that every correspondence provided by the State about voting be in English. By providing English-only absentee ballot applications or by failing to render its website and public statements in Spanish, Secretary Raffensperger did not transform the election into an "English-only election process." *United States v. Berks Cty., Pennsylvania*, 277 F. Supp. 2d 570, 579 (E.D. Pa. 2003). Though an election conducted entirely in English only would likely violate Plaintiffs rights,[9] Secretary Raffensperger's actions here did not create an English-only election, especially in light of Gwinnett County's continuing distribution of voting materials in Spanish through physical materials and its website. Therefore, neither the Gwinnett Defendants nor Secretary

---

[8] *Arroyo v. Tucker*, 372 F. Supp. 764, 767 (E.D. Pa. 1974).
[9] *See id.* at 767 (noting that courts have found that "[t]he conduct of an election in English only violates plaintiffs' rights under the Voting Rights amendments").

Raffensperger have conditioned the right to vote on the ability to read and understand English and are not subject to liability under Section 4(e).

## VI.    CONCLUSION

Because Plaintiffs lack standing, have alleged claims that are no longer live, and have failed to state claims upon which relief could be granted, Defendants' Motions to Dismiss [Doc. 38-1, 39-1] are **GRANTED**.

**IT IS SO ORDERED** this 5th day of October, 2020.


WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE